Ben F. Hopkins v. Commissioner.
Hopkins v. Commissioner
Docket No. 110171.
United States Tax Court
1943 Tax Ct. Memo LEXIS 511; 1 T.C.M. (CCH) 427; T.C.M. (RIA) 43022; January 14, 1943
*511 David A. Gaskill, Esq., and Earl P. Schneider, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves deficiencies in income tax determined by the Commissioner as follows: Taxable year
Amount
1936
$60,082.56
1937
9,048.87
1938
5,316.28
1939
10,528.08
The question involved is whether the net income of certain trusts created by the petitioner for the benefit of two minor sons is taxable to him. The parties have filed a stipulation of most of the facts which we adopt and incorporate herein by reference. The material parts thereof are included in our findings of fact made from evidence submitted at the hearing. Findings of Fact The petitioner is an individual residing in Cleveland Heights, Ohio. His income tax returns for the taxable years here involved were filed with the collector for the eighteenth district of Ohio. On December 31, 1935, the petitioner was president of the Cleveland Graphite Bronze Co., and owned some 43,000 shares of its capital stock. On that day he transferred two certificates, each representing 5,000 shares of the stock, to Central United National *512 Bank of Cleveland (now Central National Bank of Cleveland), to be held and administered by it and himself as co-trustees in accordance with the terms of two Agreements and Declarations of Trust then executed by him. Paragraph 5 of each of the trust instruments provides in part as follows: 5. I reserve the right at any time during my lifetime to change the Corporate Trustee herein or hereafter appointed by me to such other bank or trust company in the United States as I may designate in writing, * * *. In any event said successor corporate trustee shall be a bank or trust company in the United States having the necessary corporate powers to succeed as corporate trustee hereunder and a capital and surplus of not less than Four Million Dollars ($4,000,000.00). * * * Paragraph 7 of each instrument empowers the trustee, among other things, to collect the income and profits arising from trust assets then transferred to the trustees or later acquired by them, to sell, exchange, lease and otherwise dispose of trust assets; to invest and reinvest trust funds in such loans, stocks, securities or real estate as they may deem proper without regard to statutes, rules or practices of courts *513 limiting trust investments; to retain any property or securities transferred to the corporate trustee without liability for depreciation; to determine whether money or property coming into possession of the corporate trustee should be treated as principal or income, and to apportion expenses and losses to principal or income as they deem just; to borrow money upon such terms and at such times as they deem proper for the protection or improvement of the trust estates; to compromise claims in favor of or against the trust estates; to make distributions of trust assets in kind; to vote all stocks or securities in the trust estate; and to exchange securities for other securities issued by the same or another corporation whether or not in connection with the reorganization, consolidation or merger of any corporation. Other pertinent provisions of one of the trust instruments follow: 14. The Trustees shall not use any part of the income of the trust estate to pay any insurance premiums on any policy of insurance on my life held as a part of the trust, but such premium or premiums may be paid from the principal of the trust estate, if the Trustees deem it advisable so to do. 15. The net *514 income from the trust estate shall be accumulated and added to the principal of the trust estate until my son Ben F. Hopkins, Jr. arrives at the age of twenty-one years and thereafter the net income shall be paid to him monthly so long as he lives, provided, however, that so long as I am living and competent to act, there may be and shall be paid to and applied and utilized for my son, Ben F. Hopkins, Jr. from the net income and/or principal such sum or sums, and at such time or times, and in such manner as I may, in my sole discretion, deem to be to his best interests. Any income not paid to, nor expended nor utilized for my said son shall be accumulated and added to the principal of the trust estate. 16. Upon the death of my son Ben F. Hopkins, Jr. the trust estate remaining unconsumed at his death shall vest in and be distributed in such shares and amounts, and in such manner, as my son Ben F. Hopkins, Jr. may appoint by last will and testament or codicil; provided, however, this power must be exercised in favor of one or more of the following, to-wit: My son's widow, the lawful issue of my son's body, my son's mother, and his brothers. The corresponding provisions of the other *515 instrument are the same, except that the beneficiary named therein is John B. Hopkins, another of petitioner's sons. Provision is made, in paragraph 17 of each instrument, in case of the failure of either son to exercise his testamentary power of appointment, for gifts over of the remainder to the issue of such son, or in default of issue to petitioner's other sons and their issue per stirpes, subject to certain rights of the widow of the deceased son to receive the income from one-half of the remainder. This paragraph also contains the following provisions: * * * Should it occur at any time that there are no living beneficiaries hereunder, then this trust shall terminate and the trust estate shall vest in and be distributable to The Cleveland Foundation of Cleveland, Ohio. Paragraph 18 of both instruments contains spendthrift provisions directing that the trustees shall hold all income and principal, and in their discretion expend only such sums as they deem proper for the maintenance of any beneficiary or his wife or children, in the event that he attempt to alienate or encumber his interest, or upon the occurrence of any event which would result by operation of law in its *516 alienation or encumbrance. Paragraph 19 of both instruments provides: 19. This settlement is made without any right of revocation or recall in me, but the right is reserved to me, during my life, in case it is found or considered that this instrument is uncertain or incomplete in any respect, to from time to time modify the terms of this instrument, but only for the purpose of clarifying, defining or enlarging the powers of the Trustees to facillitate the administration of the trust estate. Any such modification shall be by written instrument signed by me and delivered to the Corporate Trustee. On January 13, 1939, petitioner executed two supplemental trust agreements wherein, reciting the power of modification reserved to himself in paragraph 19 of the original instruments, he directed that the trustees, during the life of his sons Ben or John, and upon written request by either, should have the discretionary power to make payments out of trust corpus for the maintenance, comfort, support and education of such son, or of his wife or children. This grant of power was stated to be for the purpose of perpetuating, after petitioner's death, the power reserved to himself by paragraph *517 15 of the trust instruments; the trustees were directed, in its exercise, to consider petitioner's "own steadfast purpose to provide adequate and suitable financial support for my son." Both supplemental instruments also directed the trustees, upon written request by either of the two sons, to pay to him out of the principal fund of the trust estate a sum sufficient to purchase or to build a suitable dwelling house for his own use. Both trusts continued in force during all of the taxable years, and both of the supplemental trust agreements of January 13, 1939, continued in force during the remainder of that year. Petitioner did not exercise his power to appoint a different corporate trustee. Ben F. Hopkins, Jr., was born July 30, 1919; John B. Hopkins was born July 18, 1920; both were minors during all of the taxable years involved. The petitioner was amply able to and did personally provide for their support during that period. He never directed that any payments of principal or income of the trust funds be made to them, and no part of the income or principal received or held by the trustees was distributed, but all income was accumulated and added to the corpus of the trust from *518 which it arose. Aggregate amounts of net income received by the trustees in each of the taxable years, and the sources, were as follows: Source - Taxable
Capital
Interest on U.S.
Year
Gains
Government Bonds
Undisclosed
Total
1936
$75,769.18
$205.30
$14,283.56
$90,258.04
1937
None
440.00
15,485.43
15,925.43
1938
363.90
455.97
11,149.45
11,969.32
1939
126.30
467.50
16,470.38
17,064.18
The amounts shown in the foregoing table as capital gains represent the portions of the actual gains which are includible in gross income after giving effect to the limitations on capital gains provided by the applicable Revenue Acts. Those attributable to the years 1938 and 1939 were long-term capital gains. The trustees added the amounts of all capital gains to the corpus of the trust from which they arose. Opinion We have here to decide first of all whether the petitioner is liable to taxation upon the income of a trust set up by him in which it was provided that there should be paid to and applied and utilized for his son from the net income and/or principal "such sum or sums, and at such time or times, and in such manner as I may, in my sole discretion, *519 deem to be to his best interests." In , we considered a situation very similar to that herein involved, and held, distinguishing , that where the discretion as to what part of trust income should be used for the support and maintenance of a minor dependent child is not left to the trustee, but to the settlor of a trust upon whom rested the legal obligation to support and maintain the minor beneficiary during minority, the trustor was taxable upon the entire trust income, though only small amounts were actually paid for the support of the minor. In , affd., , certiorari denied, , we again considered the taxability to the settlor of trust income where the trust was for the benefit of minor children of the trustor, and the settlor reserved to himself the discretion as to application of trust income for their support, maintenance, education and enjoyment. We held that income to be taxable to the settlor. In , *520 the Supreme Court held, in case of a trust set up for the maintenance, education and support of the trustor's minor child, that trust income was taxable to the trustor, irrespective of the fact that the income was not actually used for support of the infant. We followed the Stuart case in . Petitioner suggests, however, that the effect of the Stuart case is limited to trusts where there is specific provision for the use of income for the maintenance, education and support of those to whom the settlor owes parental duty, and that in this case there was no such specific provision. However, the language of the trust instrument here being construed does provide that trust income shall be paid to, applied to, and utilized for, the trustor's son in such sums as the trustor in his discretion deems to his best interests. The Stuart case, although saying that it deals with a trust for minors where trustees have authority to devote such net income as to them shall seem advisable to the education, support and maintenance of a minor, in addition goes on to say: * * * The applicable statute says, "Where any part of *521 the income * * * may * * * be distributed to the grantor * * * then such part * * * shall be included in computing the net income of the grantor." Under such a provision the possibility of the use of the income to relieve the grantor, pro tanto, of his parental obligation is sufficient to bring the entire income of these trusts for minors within the rule of attribution laid down in Douglas v. Willcuts. Such language is clearly, we think, applicable to the situation here considered, and we think that the Court had no intention of distinguishing a case merely because the words "education, support and maintenance" were not used in the trust instrument where it did contain a provision that trust income should be paid to, and applied and utilized for, the minor. The petitioner further suggests, however, that the income could have been used only in the "best interests" of the minor and that since the father, the trustor and petitioner here, could and did support, educate, and maintain the minor out of his own funds, the use of trust funds would not have been proper or required or within proper discretion of the trustees, because under such circumstances such use would not have *522 been to the best interest of the minor beneficiary. The answer to that view is, in our opinion, that the discretion controlling in this matter is that of the grantor, not that of the trustees, and that the matter is within the trustor-petitioner's sole discretion. Therefore, the petitioner had it within his discretion and power to charge the maintenance, education and support of his minor child to the trust income, if he so desired. Such setting up of a trustwallet out of which legal parental obligations may be discharged is clearly, we think, within the prohibition intended by Douglas v. Willcuts and Helvering v. Stuart. We conclude and hold that the petitioner was taxable upon the trust income involved. This conclusion renders it unnecessary to consider other questions raised by the briefs of the parties. Decision will be entered under Rule 50.